# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 1:24-cv-00838 |
| Plaintiff, | Judge J. Philip Calabrese |
| v. | Magistrate Judge Jennifer D. Armstrong |
| SHERRI TENPENNY, | |
| Defendant. | |

## OPINION AND ORDER

The United States alleges that Defendant Sherri Tenpenny owes federal taxes for tax years 2001, 2012, and 2013. In response to the complaint, Defendant filed a *pro se* document that purported to be an answer. Substantively, it argued for dismissal of the case. The Court construed that filing as a motion to dismiss and directed the United States to respond to it as a motion. For the following reasons, the Court **DENIES** Defendant's motion to dismiss.

### FACTUAL AND PROCEDURAL BACKGROUND

Construing the facts alleged in the complaint in favor of Dr. Tenpenny as the non-moving party, as the Court must in the present procedural posture, the United States bases its claim on the following facts.

#### A. Outstanding Balances Alleged

According to the complaint, on April 8, 2024, Dr. Tenpenny had outstanding balances due to the Department of the Treasury totaling $646,929.82 for tax year 2001, assessed on November 10, 2008; tax year 2012, assessed on May 6, 2013; and

tax year 2013, assessed on February 6, 2015. (ECF No. 1, ¶ 3, PageID #1–2.) Despite notice to Dr. Tenpenny and a demand for compliance, Dr. Tenpenny "failed, neglected, or refused" to pay the outstanding balances. (*Id*., ¶¶ 4–5, PageID #2.)

Before this lawsuit, Dr. Tenpenny "submitted several offers in compromise" and entered "installment agreements" for tax years 2001 and 2012. (*Id*., ¶ 6, PageID #2–3.) Subject to guidelines from the Department of the Treasury, the Internal Revenue Service is authorized to accept a compromise offer on unpaid taxes, either through a lump-sum payment or through periodic payments, 26 U.S.C. § 7122, and to enter agreements to permit unpaid taxes to be paid back in installments, *id*. § 6159. For tax year 2001, Dr. Tenpenny submitted offers-in-compromise, which were pending with the IRS during the following periods:

- January 13, 2009 through June 10, 2009;
- January 15, 2010 through May 17, 2011;
- February 5, 2016 through June 8, 2017; and
- July 31, 2018 through November 9, 2020.

(ECF No. 1, ¶ 6, PageID #2.) Additionally, Dr. Tenpenny entered installment agreements for tax year 2001 which were in effect from August 30, 2011 through June 24, 2013 and from May 5, 2015 through July 3, 2017. (*Id*., ¶ 6, PageID #2–3.)

For tax year 2012, Dr. Tenpenny submitted offers-in-compromise, which remained pending from February 5, 2016 through June 8, 2017 and from July 31, 2018 through November 9, 2020. (*Id*., ¶ 6, PageID #2.) Also, she entered installment

2

agreements for tax year 2012, which were in effect from May 25, 2013 through June 24, 2013 and from May 5, 2015 through July 3, 2017. (*Id.*, ¶ 6, PageID #2–3.)

### B. Procedural History

On May 9, 2024, Plaintiff filed a complaint for the "unpaid federal tax liabilities" Dr. Tenpenny owes, seeking a judgment in the amount of $646,929.82, plus additional interest. (ECF No. 1, PageID #1.) On June 18, 2024, Defendant filed a document titled "Answer and Affirmative Defenses," which the Court construed as a motion to dismiss for failure to state a claim. (ECF No. 3; *see also* ECF No. 4, PageID #51.)

## ANALYSIS

A Rule 12(b)(6) motion tests "the plaintiff's cause of action as stated in the complaint"; it is "not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958–59 (6th Cir. 2005). When determining whether the plaintiff states a claim on which relief can be granted, the Court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A claim is plausible where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal* 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). To survive a motion to dismiss, a complaint must "raise a right to relief above the

speculative level" into the "realm of plausible liability." *Twombly*, 550 U.S. at 555, 557 n.5.

The plaintiff's obligation to provide the grounds for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555. Nor is a court required to accept "[c]onclusory allegations or legal conclusions masquerading as factual allegations." *Eidson v. Tennessee Dep t of Child. s Servs.*, 510 F.3d 631, 634 (6th Cir. 2007). Therefore, the Court distinguishes between "well-pled factual allegations," which must be treated as true, and "naked assertions," which need not be. *See Iqbal*, 556 U.S. at 678 ("Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.") (cleaned up); *see also, e.g.*, *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 375 (6th Cir. 2011) (determining that because some of the plaintiff's factual allegations were "not well-pleaded," "their conclusory nature 'disentitles them to the presumption of truth'").

## I. Jurisdiction of the Internal Revenue Service

Dr. Tenpenny argues that the federal income tax laws are unconstitutional. For this argument, she cites various statutes without developing much, if any, argument in support of their application or explaining their relevance. Dr. Tenpenny claims that federal income tax laws, including the Internal Revenue Code, cannot extend to the individual States. Instead, they apply to federal districts and territories "over which the United States government exercises exclusive legislative jurisdiction." (ECF No. 3, PageID #13.)

4

The Sixteenth Amendment easily disposes of this argument. It provides that "[t]he Congress shall have power to lay and collect taxes on incomes, from whatever source derived, without apportionment among the several States, and without regard to any census or enumeration." Simply put, through this constitutional amendment, Congress has the power to levy and collect direct taxes from citizens and persons within the United States. Originally, the Constitution gave Congress the "power to lay and collect taxes, duties, imposts and excises," U.S. Const. art. I, § 8, so long as any "capitation, or other direct tax" is levied "in proportion to the census," *id.* § 9. After the Supreme Court held that taxes on rents or income derived from real estate were direct taxes that required apportionment among the States based on population, *Pollock v. Farmers' Loan & Tr. Co.*, 157 U.S. 429, 553 (1895), the Sixteenth Amendment overruled the decision and gave Congress the power to levy income taxes without regard to Article I's apportionment requirement.

To challenge the jurisdiction of the Internal Revenue Service, Dr. Tenpenny relies on *Caha v. United States*, 152 U.S. 211, 215 (1894), a case which predates *Pollock* and ratification of the Sixteenth Amendment by some nineteen years. In particular, she quotes the following line from that decision: "The laws of congress in respect to those matters do not extend into the territorial limits of the states, but have force only in the District of Columbia, and other places that are within the exclusive jurisdiction of the national government." However, she takes this sound bite out of context. *Caha* involves a criminal prosecution for perjury in a federal territory, where the Constitution vests Congress with broad authority akin to a

5

State's police powers. Those police powers are the "matters" to which the Court in *Caha* refers, not the power of the Congress to lay and collect income taxes under the Sixteenth Amendment. *Id.* at 215.

Dr. Penny also relies on *United States v. Spelar*, 338 U.S. 217 (1949). This reliance is similarly misplaced. There, in determining whether the Federal Tort Claims Act applies internationally, notwithstanding its express language to the contrary, the Supreme Court referenced a canon of construction that the application of federal legislation is limited to the "territorial jurisdiction of the United States" unless "a contrary intent appears." *Id.* at 222. This case and the discussion on which Dr. Tenpenny relies have no application or relevance here.

The Court could go on, but those examples make the point.

Notably, courts reject arguments like those Dr. Tenpenny advances and find them "completely without merit and patently frivolous." *United States v. Mundt*, 29 F.3d 233, 237 (6th Cir. 1994). In fact, such arguments are so patently frivolous that courts impose sanctions on those who make them. *See id.* (quoting *United States v. Collins*, 920 F.2d 619, 629 (10th Cir. 1990), *superseded by statute on other grounds as recognized by Lewis v. Commissioner of Internal Revenue*, 523 F.3d 1272 (10th Cir. 2008)); *see also Lovell v. United States*, 755 F.2d 517, 519–20 (7th Cir. 1984). On the assumption that Dr. Tenpenny, a well-educated and licensed professional, will refrain from making such arguments or from engaging in frivolous conduct in this litigation, the Court declines to impose sanctions here.

6

## II. Statutory Arguments

Dr. Tenpenny includes in her motion to dismiss various sections of the Administrative Procedure Act and the United States Code without developing a cogent argument about their application, or even relevance, to this matter and, more specifically, to her argument for dismissal. (*See* ECF No. 3, PageID #14–21.) "It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (quoting *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293–94 (1st Cir.1995)). This is true even where, as here, a litigant represents herself. *See Ford v. Hill*, No. 5:21-cv-01618, 2024 WL 2946112, at *10 n.10 (N.D. Ohio May 17, 2024). "[L]iberal construction does not require a court to conjure allegations on a litigant's behalf." *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004) (quoting *Erwin v. Edwards*, 22 F. App'x 579, 580 (6th Cir. 2001)). Therefore, Dr. Tenpenny's request for dismissal based on unarticulated statutory arguments is without merit.

## III. Statute of Limitations

Entering the realm of more plausible arguments, Dr. Tenpenny maintains that that the statute of limitations has expired, making this collection suit untimely. (ECF No. 3-1, PageID #23; ECF No. 3-5, PageID #29.) Generally, courts will not dispose of a case as time-barred on a motion to dismiss, *Jodway v. Orlans*, 759 F. App'x 374, 379 (6th Cir. 2018), because "the statute of limitations is an affirmative defense, for which the defendant bears the burden of proof," *Spencer v. City of Hendersonville*, 487 F. Supp. 3d 661, 678 (M.D. Tenn. 2020); *Cataldo v. United States Steel Corp.*, 676 F.3d

7

542, 547 (6th Cir. 2012). "To avoid dismissal, plaintiffs' complaint must simply assert facts showing that it is plausible that their claims are timely or that the statute of limitations was tolled." *Grover v. BMW of N. Am., LLC*, 434 F. Supp. 3d 617, 630 (N.D. Ohio 2020) (citation omitted). Unless the complaint makes clear that the plaintiff can prove no set of facts to show that the statute of limitations has not run, a court should not grant a motion to dismiss the complaint. *Snyder-Hill v. Ohio State Univ.*, 48 F.4th 686, 698 (6th Cir. 2022).

Typically, the IRS has ten years after an assessment to collect a tax debt, either by levy or a court proceeding. 26 U.S.C. § 6502(a)(1). However, the limitations period is suspended while offers-in-compromise and installment agreements are pending. *Id.* § 6331(i)(5) & (k)(1)–(2). Additionally, the limitations period remains tolled for thirty days after an offer-in-compromise is rejected or an installment agreement is terminated. *Id.* § 6331(k)(1)–(2) & (3); *see also id.* § 6331 (k)(2)(D) (applying Section 6331(i)(5) (the tolling provision) to Section 6331(k)).

For the purposes of the Court's calculations, the Court omits the thirty-day grace period applied to rejections of an offer-in-compromise because the complaint does not specify how each offer-in-compromise was resolved. *See id.* § 6331(k)(1)(B) (requiring rejection of offer-in-compromise for application of that thirty-day period). Similarly, while Section 6333(k)(2) excludes periods in which an installment agreement was pending and thirty days after such an agreement ends, the complaint does not provide sufficient information to determine when an installment agreement

8

was pending. Therefore, the Court omits tolling during which an installment agreement was pending and calculates the applicable limitations periods as follows:

### III.A. Tax Year 2001

The statute of limitations began to run for tax year 2001 on November 10, 2008, the date of the assessment. (ECF No. 1, ¶ 3, PageID #2.) Excluding periods of time during which an offer-in-compromise was pending under 26 U.S.C. 6331(k)(1)(A) and excluding thirty days after an installment agreement ends under section 6331(k)(2)(D), the Court does not find that the ten-year limitations period has expired.

| *Tolling Event* | *Beginning Date* | *Ending Date* | *Days Run* |
|---|---|---|---|
| *Time Running* | 11/10/2008 | 1/12/2009 | 63 |
| *Offer in Compromise* | 1/13/2009 | 6/10/2009 | |
| *Time Running* | 6/11/2009 | 1/14/2010 | 217 |
| *Offer in Compromise* | 1/15/2010 | 5/17/2011 | |
| *Time Running* | 5/18/2011 | 6/23/2013 | 767 |
| *Installment Agreement* Terminated | 6/24/2013 | 7/24/2013 | |
| *Time Running* | 7/25/2013 | 2/4/2016 | 924 |
| *Offer in Compromise* | 2/5/2016 | 6/8/2017 | |
| *Time Running* | 6/9/2017 | 7/2/2017 | 23 |
| *Installment Agreement Terminated* | 7/3/2017 | 8/2/2017 | |
| *Time Running* | 8/3/2017 | 7/30/2018 | 361 |
| *Offer in Compromise* | 7/31/2018 | 11/9/2020 | |
| *Time Running* | 11/9/2020 | 5/8/2024 | 1,276 |

9

| | |
|---|---:|
| Total Days Run | 3,632 |
| in years | 9.9507 |

(ECF No. 7, PageID #57–59; ECF No. 1. ¶ 6, PageID #2–3.) Based on the periods provided in the complaint and detailed further in the United States' brief, the Court finds that sufficient tolling events prevented expiration of the ten-year limitations period.

### III.B. Tax Year 2012

The IRS issued an assessment for tax year 2012 on May 6, 2013. (ECF No. 1, ¶ 3, PageID #2.) Under 26 U.S.C. § 6331(k), the United States alleges that the statute of limitations was tolled during two periods of time while offers-in-compromise were pending: (1) February 5, 2016 through June 8, 2017, and (2) July 31, 2018 through November 9, 2020. (ECF No. 1, ¶ 6, PageID #2.) These periods amount to more than three years, making the complaint timely under 26 U.S.C. § 6502(a)(1).

### III.C. Tax Year 2013

The assessment for tax year 2013 was made on February 6, 2015. (ECF No. 1, ¶ 3, PageID #2.) Because ten years has not elapsed since the date of the assessment, the claim for this tax year is timely.

### CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's motion to dismiss.

**SO ORDERED.**

Dated: August 9, 2024

                                                    J. Philip Calabrese
                                                    United States District Judge
                                                      Northern District of Ohio